**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

CHRISTINA McCAIN, JESSICA MARTINEZ MANZO and MATTHEW THOMAS, individually and on behalf of all others similarly situated

Plaintiffs

v

INTERNATIONAL PAPER COMPANY

Defendant

Civil Action No. 25-02003

Judge

Magistrate

Complaint – Class Action

---

**CLASS ACTION COMPLAINT FOR DAMAGES**

---

NOW COME Plaintiffs/Putative Class Representatives, CHRISTINA McCAIN, JESSICA MARTINEZ MANZO and MATTHEW THOMAS, individually and on behalf of all others similarly situated, who seek class certification and complain and allege on information and belief the following against INTERNATIONAL PAPER COMPANY:

1. This is a class action brought pursuant to Fed. R. Civ. P. 23, wherein Plaintiffs seek damages in relation to Defendant's ownership and operation of a paper mill located at 401 Ave U, Bogalusa, Washington Parish, Louisiana (the "**Facility**").

2. Through Defendant's construction, operation, and maintenance of the Facility, it wrongfully emits substantial and unreasonable noxious odors that physically invade the Plaintiffs' and putative Class's properties.

**PARTIES**

3. Plaintiff/Putative Class Representative, Christina McCain, a Louisiana citizen and person of the full age of majority, who resides at a home located at 1847 George Mitchell Rd., Bogalusa, Washington Parish, Louisiana 70427.

4. Plaintiff/Putative Class Representative, Jessica Martinez Manzo, a Louisiana citizen and person of the full age of majority, who resides at a home located at 1630 Azalea Court, Bogalusa, Washington Parish, Louisiana 70427.

5. Plaintiff/Putative Class Representative, Matthew Thomas, a Louisiana citizen and person of the full age of majority, who resides at a home located at 915 East 4th St., Apt. 56, Bogalusa, Washington Parish, Louisiana 70427.

6. The Defendant, International Paper Mill, is a New York corporation authorized to do business in the State of Louisiana. Defendant's corporate headquarters is located at 6400 Poplar Ave, Memphis, Tennessee 38197. Defendant owns and/or operates the Facility.

7. Defendant is liable *in solido* to Plaintiffs and the putative Class for all elements of damages allowed by Louisiana law, whether past, present or future damages, in an amount that is just and reasonable in the premises.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). CAFA jurisdiction is appropriate because there are 100 or more Class Members and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

9. Independent of and in addition to original jurisdiction under CAFA, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events or omissions giving rise to Plaintiffs' claims took place in this Judicial District, and because the property that is the subject of this action is situated in this Judicial

District.

## FACTUAL ALLEGATIONS

11. Defendant exercises ownership and control over the Facility, which is located at 401 Avenue U, Bogalusa, Louisiana.

12. Defendant's operations include a pulp mill and corrugated box plant.

13. Defendant's process includes numerous fuel fed boilers, digesters, evaporators and furnaces.

14. The Plaintiffs and putative Class Members reside within 1.5 miles of the Facility (the "**Class Area**").

15. The Facility uses the kraft chemical recovery process to make pulp from wood and manufactures paper products. This process is known to produce noxious odors.

16. The chemicals used to break down wood and products of the chemical reactions involved include hydrogen sulfide, methyl mercaptan, dimethyl sulfide and dimethyl disulfide. These substances generate highly odiferous noxious odors. In particular, hydrogen sulfide is known to create a rotten egg smell.

17. The Plaintiffs' and putative Class Members' properties have been, and continue to be, invaded by fugitive noxious odors emitted from the Facility.

18. A properly designed, operated, and maintained Facility will adequately capture, remove, and dispose of noxious odors and prevent them from escaping into the ambient air as fugitive emissions.

19. Defendant is required to abate noxious odor emissions by, among other things, operating the Facility in a manner that adequately captures, controls, and mitigates those emissions so as to prevent them from escaping into the ambient air surrounding the Facility, and by implementing other reasonably available emission mitigation, elimination, and control systems at

the Facility.

20. Defendant has failed to use adequate odor mitigation strategies, processes, technologies, and/or equipment to control fugitive emissions from the Facility and prevent those fugitive emissions from physically invading the homes and properties of the Plaintiffs and putative Class.

21. Defendant's failures to prevent off-site odors include, but are not limited to:

a) Utilizing inadequate systems for transporting, loading, unloading and storing hazardous substances, including the mismanagement of equipment, raw ingredients, and byproducts;

b) Failing to train and educate employees on safe procedures for handling Facility materials;

c) Failing to monitor and keep records of Facility equipment;

d) Failing to develop and/or implement adequate odor prevention plans;

e) Failing to utilize other odor prevention, elimination, and mitigation measures and technologies available to Defendant; and

f) Other failures revealed during discovery.

22. Noxious odors from the Facility have interfered with activities in the surrounding areas (Class Area) and they have precluded the reasonable use and enjoyment of private and public spaces in those areas.

23. The Facility and its emissions have been the subject of frequent and numerous complaints by residents in the nearby residential area (Class Area).

24. The Facility's odors preclude Plaintiff/Putative Class Representative Christina McCain from the ordinary and regular use of her property. The odors hinder her ability to sit outside and engage in outdoor activities.

25. Plaintiff/Putative Class Representative Christina McCain describes Facility odors as follows: "It stinks so bad outside we really don't want to birthday parties at home or gatherings,

BBQ's etc. Sometimes it's hard to even sit outside and let the kids play outside."

26. Plaintiff/Putative Class Representative Matthew Thomas describes Facility odors as follows: "I live about 1 mile from the mill. It is very nauseating most days to sit outside or going [through] there, it causes headaches, my kids go out to play and they stink when they come in to the point they bathe right away."

27. More than 65 households within the proposed Class Area have contacted Plaintiffs' counsel in relation to the noxious odors originating from the Facility. Below is a small sample of what members of the putative Class have conveyed to Plaintiffs' counsel:

a) Putative Class Member Roscoe Richmond describes the offensive odors from Defendant's Facility as "The emission of odors are so bad at times that people do not want to come in the neighborhood. Not only is it a nuisance outdoors but inside as well (i.e. clothes, curtains, etc.)."

b) Putative Class Members Erica Sartin and Brandon Mixon reported that there are "Consistent foul smells that limit the ability to entertain, open windows and allow my kids to spend time outdoors. Having window a/c units seems to make smells worse and seem to keep filters constantly clogged and needing to be changed."

28. Defendant's well-documented pattern of failing to control the Facility's emissions is further demonstrated by the following:

a) The Environmental Protection Agency (EPA) has issued notices of violations (NOVs) for emission exceedances of sulfur-based hazardous air pollutants and for failure to report a gap in the monitoring of nitrogen oxides. The NOVs were issued by the EPA on September 30, 2021 and June 21, 2023.

b) In February 2025, the EPA issued an administrative Consent Agreement and Final Order to International Paper for Clean Air Act violations at their pulp and paper mill. International Paper agreed to pay a civil penalty of $500,000 and to develop protocols and documents related to regulatorily-required inspections and boiler compliance at the Facility.

c) There have also been numerous complaints to various governmental agencies.

29. The Facility has emitted, and continues to emit, preventable noxious odors that are noticeable beyond the bounds of its property and into the neighboring Class Area.

30. Defendant continues to operate its Facility in violation of Louisiana law and operating permits.

31. The noxious odors are offensive to the Plaintiffs and putative Class Members and would be offensive to reasonable people of ordinary health and sensibilities.

32. The noxious odors have caused property damage and substantially interfered with the abilities of the Plaintiffs and putative Class Members to reasonably use and enjoy their homes and properties.

33. The invasion of the Plaintiffs' and putative Class Members' properties by noxious odors has reduced the value of those properties.

34. The Plaintiffs and the putative Class Members are a limited subset of the broader community, namely owners/occupants and renters of residential properties who live within the Class Area and fit within the Class definition.

35. Members of the public including, but not limited to, businesses, employees, commuters, tourists, visitors, minors, customers, clients, students, and patients have been harmed by the noxious odors emitted from the Facility into public spaces. However, unlike the Plaintiffs and putative Class Members, members of the public who are outside of the Class definition have not suffered damages in the form of diminished property values and/or the loss of use and enjoyment of their private property.

36. Defendant knew, or should have known, about its substantial noxious odor emissions through numerous complaints, LDEQ action and media attention.

37. Defendant intentionally, knowingly, willfully, recklessly, and/or negligently failed to properly construct, maintain, and/or operate the Facility. Defendant caused an invasion of the Plaintiffs' and putative Class Members' properties by noxious odors on frequent, intermittent, and reoccurring occasions too numerous to list individually.

## CLASS ACTION ALLEGATIONS

### A. Definition of the Class

38. Plaintiffs bring this action individually and on behalf of all persons that the Court may determine appropriate for class certification, pursuant to Fed. R. Civ. P. 23 (the "**Class**" or "**Class Members**"). The Plaintiffs seek to represent a Class of persons preliminarily defined as:

> **All owner/occupants and renters of residential property residing within one and one-half (1.5) miles of the Facility at any time within two years prior to the filing of this Complaint.**

The definitional Class boundary is subject to modification as discovery discloses the location of all persons properly included in the Class. Plaintiffs reserve the right to propose one or more sub-classes if discovery reveals that such sub-classes are appropriate.

39. This case is properly maintainable as a class action pursuant to and in accordance with Fed. R. Civ. P. 23 in that:

a) The Class, which includes hundreds of members, is so numerous that joinder of all members is impracticable;

b) There are substantial questions of law and fact common to the Class, including those set forth in greater particularity herein;

c) Questions of law and fact which are all common to the Class predominate over any questions of law or fact affecting only individual members of the Class;

d) The claims of the representative Plaintiffs are typical of the claims of the Class;

e) A class action provides a fair and efficient method for adjudication of the controversy;

f) The relief sought in this class action will effectively and efficiently provide relief to all members of the Class;

g) There are no unusual difficulties foreseen in the management of this class action; and

h) Plaintiffs, whose claims are typical of those of the Class, through their experienced counsel, will zealously and adequately represent the Class.

**B. Numerosity**

40. The number of separate residences within the Class Area exceeds 3,500. Accordingly, the members of the Class are so numerous that joinder of all parties is clearly impracticable.

41. Further, the prosecution of separate lawsuits by Class Members would risk inconsistent or varying adjudications. Class-wide adjudication of these claims is, therefore, appropriate.

**C. Commonality**

42. Numerous common questions of law and fact predominate over any individual questions affecting Class Members, including, but not limited to the following:

a) Whether and how the Defendant wrongfully, intentionally, knowingly, recklessly, and/or negligently failed to maintain and operate the Facility, thereby causing noxious odors to invade their properties;

b) Whether Defendant owed any duties to the Class Members;

c) Which duties Defendant owed to the Class Members;

d) Which steps Defendant has and has not taken in order to control the emission of noxious odors through the maintenance and operation of the Facility;

e) Whether and to what extent the Facility's noxious odors were dispersed over the Class Area;

f) Whether it was reasonably foreseeable that Defendant's failure to properly maintain and operate the Facility would result in an invasion of the Class Members' property interests;

g) Whether the degree of harm suffered by the Class Members constitutes a substantial annoyance, interference, or deprivation with their use and enjoyment of their properties; and

h) The proper measure of damages incurred by the Class Members.

**D. Typicality**

43. The claims of the named Plaintiffs are typical of the claims of all members of the

Class. If brought and prosecuted individually, the claims of each Class Member would require proof of many of the same material and substantive facts, utilize the same complex evidence (e.g. expert testimony), rely upon the same legal theories, and seek the same type of relief.

44. The claims of the named Plaintiffs and the other Class Members have a common cause and their damages are of the same type. The claims originate from the same failures of the Defendant to properly construct, maintain and operate the Facility.

45. All Class Members have suffered injury in fact as a result of the invasion of their properties by noxious odors emitted by Defendant's Facility. The noxious odors interfere with their ability to use and enjoy their homes and have diminished their property values.

**E. Adequacy of Representation**

46. Plaintiffs' claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class's claims will be prosecuted with diligence and care by the Plaintiffs as representative of the Class. Plaintiffs will fairly and adequately represent the interests of the Class and they do not have interests adverse to the Class.

47. Plaintiffs have retained the services of counsel who are experienced in complex class action litigation, and in particular class actions involving environmental concerns, including the emission of noxious odors. To best represent the interests of the Class, Martzell, Bickford & Centola has agreed to work with Liddle Sheets P.C. in this matter. Liddle Sheets P.C. has litigated over one hundred cases across the nation involving the environmental contamination of neighborhoods, often by noxious odors emitted from industrial/commercial facilities. Plaintiffs' counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent the Plaintiffs and all absent Class Members.

**F. Class Treatment is the Superior Method of Adjudication**

48. Pursuant to Fed. R. Civ. P. 23(b)(1) and (3), a class action is superior to other

methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

a) Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

b) Individual claims by Class Members would create a risk of inconsistent or varying adjudications, which would present the Defendant with incompatible standards of conduct;

c) Individual claims by individual Class Members would create a risk of adjudications which would, as a practical matter, be dispositive of the interests of other individuals who are not parties to the adjudications, or substantially impair or impede their ability to protect and pursue their interests;

d) Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

e) In view of the complexity of the issues and the expenses of litigation, the separate claims of individual Class Members are likely insufficient in amount to support the costs of filing and litigating separate actions;

f) Plaintiffs seek equitable relief relating to Defendant's common actions and failures to act, and the equitable relief sought would commonly benefit the Class as a whole;

g) Litigating these claims in one action will achieve efficiency and promote judicial economy; and

h) The proposed class action is manageable.

## CAUSE OF ACTION I
## NUISANCE

49. Plaintiffs restate all allegations of this Complaint as if fully restated herein.

50. Defendant owed, and continues to owe, a duty to the Plaintiffs and Class to prevent and abate the unreasonable interference with, and the invasion of, their private property interests.

51. The noxious odors which entered the Plaintiffs' and Class's properties originated from the Facility, which was improperly and unreasonably constructed, maintained, and/or operated by Defendant.

52. The noxious odors invading the Plaintiffs' and Class's properties are indecent and

offensive to people with ordinary health and sensibilities, and they obstruct the free use of their properties so as to substantially and unreasonably interfere with the enjoyment of life and property. This includes but is not limited to:

a) Forcing the Plaintiffs and Class Members to remain inside their homes and forego the use of their yards, porches, and other spaces, and to generally refrain from outdoor activities;

b) Causing the Plaintiffs and Class Members to keep their doors and windows closed when they would otherwise have them open;

c) Depriving the Plaintiffs and Class Members of the value of their homes and properties; and

d) Causing the Plaintiffs and Class Members embarrassment, inconvenience, and discomfort including, but not limited to, creating a reluctance to invite guests to their homes and preventing the Plaintiffs and Class Members from utilizing the outdoor areas of their respective properties.

53. The Plaintiffs' and Class's properties are situated in such proximity to Defendant's Facility as to constitute "neighboring" properties, in that they are near enough to be impacted by the tangible effects of noxious odors emitted from the Facility.

54. By constructing and then failing to reasonably repair, maintain, and operate the Facility, thereby causing unreasonable noxious odors to invade the Plaintiffs' and Class's properties, Defendant intentionally, knowingly, recklessly, and/or negligently created a nuisance that substantially and unreasonably interferes with the Plaintiffs' and Class's properties.

55. As a foreseeable, direct, and proximate result of the forgoing misconduct of the Defendant, the Plaintiffs and Class suffered damages to their properties as alleged herein.

56. The Plaintiffs and Class Members did not consent to the invasion of their properties by Defendant's noxious odors, which is ongoing and constitutes a nuisance.

57. The damages suffered by the Plaintiffs and Class are uniquely injurious to those parties because they suffer harm relating to the use and enjoyment of their lands and properties, and

decreased property values, which are not harms suffered by the general public.

58. The general public is also impacted by the Facility's noxious odors. Many members of the general public are impacted when they work, study, commute, shop, or engage in recreation in the Class Area, but they suffer no harm to the use and enjoyment of their land or property, or decreased property values.

59. Any social utility that is provided by the Facility is patently outweighed by the harm suffered by the Plaintiffs and Class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have endured substantial loss in the use and value of their properties.

60. Defendant's substantial and unreasonable interference with the Plaintiffs' and Class's use and enjoyment of their properties constitutes a nuisance. Defendant is liable for all damages arising from such nuisance, including compensatory relief.

**CAUSE OF ACTION II**
**NEGLIGENCE**

61. Plaintiffs restate all allegations of this Complaint as if fully restated herein.

62. Pursuant to La. Admin. Code Pt. III, § 905, Defendant owed, and continues to owe, a duty to the Plaintiffs and Class to operate and maintain the Facility in a reasonable manner and to reasonably prevent the fugitive emission of noxious odors.

63. Defendant's duty to conform to La. Admin. Code Pt. III, § 905 requires Defendant to install, use, and maintain air pollution control systems at the Facility to control odor emissions.

64. Facility odors can be mitigated through, *inter alia*, proper enclosures, ventilation systems/filters, scrubbers, by utilizing vapor recovery units while loading/unloading materials, and through proper monitoring, sampling, and capturing of emissions. Accordingly, odor control is practically feasible.

65. Defendant is a highly profitable corporation with multi-million dollar revenue annually. Accordingly, odor control is economically feasible.

66. The methods to mitigate Facility odors, such as enclosures, ventilation systems/filters, scrubbers, and vapor recovery units, exist and are available. Accordingly, odor control is technologically feasible.

67. Defendant breached the duty imposed by La. Admin. Code Pt. III, § 905 by failing to install, use, and/or maintain feasible air pollution control systems, thus failing to control air contaminants (i.e. odors) emitted by the Facility.

68. By failing to properly construct, maintain and operate the Facility, Defendant failed to exercise the duty of ordinary care and diligence.

69. Defendant's breach of duty was the direct and proximate cause of the invasion by noxious odors upon the Plaintiffs' and Class Members' homes, lands, and properties on occasions too numerous to list individually.

70. Such invasions by noxious odors were the foreseeable result of the foregoing conduct of Defendant (or lack thereof), and the Plaintiffs and Class Members suffered damages to their properties as alleged herein. Such damages include, but are not limited to, the loss of use and enjoyment of their properties and the diminution of property values.

71. Defendant negligently allowed conditions to exist and perpetuate that caused noxious odors to invade the Plaintiffs' and Class Members' properties. Defendant is liable for all damages arising from such negligence, including compensatory relief.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs, individually and on behalf of the proposed Class, pray for judgment as follows:

A. Certification of the proposed Class pursuant to Fed. R. Civ. P. 23;

B. Designation of the Plaintiffs as representatives of the proposed Class and designation of their counsel as Class Counsel;

C. Judgment in favor of the Plaintiffs and Class Members as against Defendant;

D. An award to the Plaintiffs and Class Members for actual and compensatory damages, including pre- and post- judgment interest;

E. An Order holding that the entrance of the aforementioned noxious odors upon the Plaintiffs' and Class's properties constituted a nuisance;

F. An Order holding that the Defendant was negligent in causing noxious odors to repeatedly invade and interfere with the Plaintiffs' and Class Members' private residential properties; and

G. Such further relief, both general and specific, that this Honorable Court deems just and proper.

Respectfully submitted,

**MARTZELL, BICKFORD & CENTOLA**

/s/Neil F. Nazareth
Scott R. Bickford (#1165)
Lawrence J. Centola (#27402)
Neil F. Nazareth (#28969)
Jason Z. Landry (#33932)
Spencer R. Doody (#27795)
Megan L. LeBlanc (#39252)
**MARTZELL, BICKFORD & CENTOLA**
338 Lafayette Street
New Orleans, Louisiana 70130
T: (504) 581-9065
E: srb@mbfirm.com
E: lcentola@mbfirm.com
E: nnazareth@mbfirm.com
E: jzl@mbfirm.com
E: srd@mbfirm.com
E: mll@mbfirm.com

AND

Steven D. Liddle*
Laura L. Sheets*
D. Reed Solt*
**Pro hac vice* applications to be submitted
**LIDDLE SHEETS P.C.**
975 E. Jefferson Avenue
Detroit, MI 48207
T: (313) 392-0015
E: sliddle@lsclassaction.com
E: lsheets@lsclassaction.com
E: rsolt@lsclassaction.com

*Attorneys for the Plaintiffs & Putative Class*